UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL S. GRANT, | Case No. 1:17-cv-00024-MJS (PC) |
| Plaintiff, | **ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |
| v. | |
| HEISOL, et al., | **(ECF No. 1)** |
| Defendants. | **THIRTY DAY DEADLINE** |

Plaintiff, a prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 6, 2016. (ECF No. 1.) Plaintiff's complaint is before the Court for screening. He has consented to Magistrate Judge jurisdiction. (ECF No. 6.) No other parties have appeared.

I.  **Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon

which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.   Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.   Plaintiff's Allegations

Plaintiff is currently incarcerated at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California,. However, his claims stem from events that

began at the Sierra Conservation Center ("SCC"), a state prison in Jamestown, California, and carried over to Plaintiff's subsequent institutions. He names Correctional Officers Heisol, G. Wright, and J. Delgado, and psychiatrist Dr. Maddox as Defendants. However, insofar as he refers to everyone identified in the complaint as a "Defendant", it appears he seeks to sue each of them individually.

Plaintiff's allegations are at times difficult to follow, but, as best the Court can determine, he seeks to allege the following:

On February 16, 2016, Plaintiff was sent to the administrative segregation unit ("ad-seg") of SCC because of enemy concerns. Defendant Heisol was Plaintiff's tier officer before Plaintiff went to ad-seg. Heisol somehow got the impression that Plaintiff told Investigative Services Unit ("ISU") officials that Heisol had drugs. Heisol was caught with a controlled substance and was disciplined. Plaintiff never knew that Heisol had drugs, and never reported Heisol to ISU officers.

On February 18, 2016, an officer came to ad-seg to move Plaintiff to another cell. When Plaintiff left his cell, four inmate assailants and Heisol met him in a side hallway out of view of other prisoners. An assault took place and continued into the main medical building. As the assault went on, Defendants watched and did not intervene. One of the inmates grabbed a medical knife and stated, "You snitchin', I'll cut yo dick off." Heisol stated, "I will have you killed, if you tell anyone. I have your family addresses." Defendants Delgado and Wright used an unreasonable amount of force to shackle Plaintiff, and Officer Bartholomew assisted. Plaintiff suffered scuffed knees and scars on his left shin. Plaintiff "appeared" to experience chest pains after Defendants injected Plaintiff with methamphetamines. Rather than send him for medical attention, Defendants subjected Plaintiff to more excessive force and threw him in a holding cell for several hours. Plaintiff was later transported to Sonora Regional Hospital "for a false medical reason." Prison custody staff and medical staff said Plaintiff was smoking "spice" (a form of synthetic marijuana), even though Plaintiff was examined upon his arrival in ad-seg on February 16, 2016.

1       On February 21, 2016, Plaintiff was discharged from the hospital and returned to SCC. He was housed in "OHU," which is in the main medical area. On February 22, 2016, Plaintiff was returned to ad-seg. That day, an officer telephoned Defendant Dr. Maddox. Dr. Maddox arrived in ad-seg and told Plaintiff he was there because an officer called him and he wanted to ask Plaintiff some questions. Based on the questions Dr. Maddox asked, Plaintiff believed Dr. Maddox was there to help Plaintiff. Plaintiff told Dr. Maddox about the assault, the methamphetamines, and the verbal abuse. Dr. Maddox manipulated Plaintiff into thinking Plaintiff would be going to a program to escape the harm caused by Defendants. Plaintiff signed a paper for this program.

       On February 23, 2016, Plaintiff was transferred to the Pelican Bay State Prison ("PBSP") Mental Health/Suicide Program unit. The next day, Plaintiff was seen by a psychiatrist (it is unclear if this was Dr. Maddox or another individual) who told Plaintiff he would have to stay in the unit for five days before he could be cleared. However, Plaintiff remained in the unit for ten days, because officers told lies to keep Plaintiff. While Plaintiff was housed at PBSP, officers at PBSP denied Plaintiff showers and logged that Plaintiff had refused showers. Hall, Burke, and an unnamed Sergeant also called Plaintiff a snitch. The Sergeant was Heisol's uncle, and Hall was Heisol's cousin. Plaintiff believes these family relationships are the reason he was sent to PBSP.

       Plaintiff did not return to SCC until March 4, 2016. When Plaintiff arrived at SCC, he began arguing with Dr. Maddox and accusing Dr. Maddox of sending him to PBSP to cover up the other Defendants' actions. Dr. Maddox was so enraged by Plaintiff's accusations that he sent Plaintiff to the California State Prison in Folsom, California. Plaintiff was never suicidal, and in fact had been cleared by five doctors at PBSP on February 29, 2016. Dr. Maddox misused his authority to cover up the abuses of other Defendants.

       Several months later, on July 23, 2016, Plaintiff was housed at the Correctional Training Facility ("CTF"). Several black inmates told Plaintiff that he needed to leave the central yard because one of the officers told them Plaintiff had arrived from SCC. During

4

unlock, Plaintiff told the tier officer that he was not safe on the central yard. The officer said to Plaintiff, "You don't have to go!" as if it were a joke. Plaintiff spoke to a lieutenant and explained that he had safety concerns on the yard. While Plaintiff was in the room with the lieutenant, he heard a familiar voice, and realized Heisol was in the room as well.

Plaintiff was placed in ad-seg. While there, he was verbally threatened, and Plaintiff believes officers did something to his food.

On August 10, 2016, Plaintiff was transferred to the Salinas Valley State Prison ("SVSP") ad-seg for temporary housing. Eight days later, he was released from ad-seg into the level 3 "SNY," or protective custody yard. Plaintiff did not want to be released from ad-seg, and he states his placement in a level 3 yard was inconsistent with his point level, which was only a level 2.

On August 25, 2016, Plaintiff made several calls to 911 on his cell phone because of inmates outside of his cell. Plaintiff's cellmate kept saying, "You can't beat CDC, you need to throw away yo' paperwork." Defendants continued to enlist inmates to threaten and intimidate Plaintiff. Eventually, Plaintiff was placed back in ad-seg pending his transfer to CSATF.

Beginning on September 11, 2016, Plaintiff was subjected to countless incidents of retaliation from a large number of Defendants. First, Plaintiff requested to go to the library, but an officer never called him down. Another time, Plaintiff was escorted across the yard in handcuffs, and when he asked Officer M. Pilkerton why he was being escorted in cuffs, she replied, "Someone read the 602 wrong[], they jumped the gun." On a third occasion, Plaintiff was sent to mental health and asked questions, but Plaintiff refused to answer them because he knew the questions were just a mental game. Defendants threatened to place Plaintiff on suicide watch if he did not answer the questions. The mental health interviews continued on January 4, 2017. On December 7, 2016, Plaintiff was called from his cell as if to go to medical, however ISU officers came for him. Plaintiff was placed in handcuffs, which he viewed as an intimidation tactic. Plaintiff was also embarrassed in front of the other inmates.

5

Plaintiff was denied his mail in October 2016, when the CSATF mailroom sent it back bearing the words "insufficient address" even though the address was correct.

Plaintiff alleges violations of First and Eighth Amendments. He states that in addition to the injuries he suffered as a result of the excessive force, he suffered emotional damage such as fear and humiliation. He seeks nominal, compensatory and punitive damages.

## IV.    Discussion

For the reasons below, Plaintiff's complaint will be dismissed with leave to amend.

### A.    Allegations Against Non-Parties and Doe Defendants

Defendants Heisol, G. Wright, J. Delgado, and Dr. Maddox of SCC are the only individuals named as Defendants in the complaint. However, Plaintiff's complaint contains allegations against non-parties Bartholomew, Hall, Burke, and Pilkerton, as well as several unnamed officers and medical professionals.

Rule 10(a) of the Federal Rules of Civil Procedure requires that each defendant be named in the caption of the complaint. A complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, [and] for what relief. . . ." McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996). Accordingly, the Court will not herein address any allegations made against individuals not named in the caption. If Plaintiff wishes to pursue such allegations, he may amend his complaint and include these additional parties in the caption. If he does not know a party's name, he may proceed against him or her as a Doe defendant.

The use of Doe defendants generally is disfavored in federal court. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). The Court cannot order the Marshal to serve process on any Doe defendants until such defendants have been identified. See, e.g., Castaneda v. Foston, No. 1:12-cv-00026 WL 4816216, at *3 (E.D. Cal. Sept. 6, 2013). Plaintiff may, under certain circumstances, be given the opportunity to identify unknown defendants through discovery prior to service. Id. (plaintiff must be afforded an opportunity to identify

6

unknown defendants through discovery unless it is clear that discovery would not uncover their identities). However, in order to proceed to discovery, Plaintiff must first state a cognizable claim.

Furthermore, Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Therefore, Plaintiff must distinguish between Doe defendants by, for example, referring to them as "John Doe 2," "John Doe 3," and so on, and describe what each did or failed to do to violate Plaintiff's rights. See Ingram v. Brewer, No. 1:07-cv-00176-OWW-DLB, 2009 WL 89189 (E.D. Cal. January 12, 2009) ("In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.").

### B.   Verbal Abuse and Threats

Allegations of name-calling, verbal abuse, or threats fail to state a constitutional claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983") (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong). To the extent Plaintiff seeks recompense based purely on the fact that hurtful statements were made, those claims are dismissed.

### C.   Eighth Amendment

The Eighth Amendment protects prisoners from both excessive uses of force and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).

#### a.   Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5

(1992) (citations omitted). For claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (citing Hudson, 503 U.S. at 7) (internal quotation marks omitted). The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency, Hudson, 503 U.S. at 8 (quotation marks and citation omitted), and although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Wilkins, 559 U.S. at 37-8 (citing Hudson, 503 U.S. at 9-10) (quotation marks omitted).

Here, Plaintiff claims that on February 18, 2016, Defendants Delgado and Wright used "an unreasonable amount of force" when they shackled Plaintiff. These allegations are insufficient to state a claim. Plaintiff must state with a degree of specificity what each Defendant did that amounted to an excessive use of force and describe in detail the facts leading up to the use of force..

Likewise, Plaintiff's claim that Defendants injected methamphetamines into Plaintiff fails to state a claim. He does not state who injected him, under what circumstances, or even how Plaintiff knew that he was administered methamphetamines. Plaintiff's excessive force claims will be dismissed with leave to amend.

        **b.    Conditions of Confinement**

            **1.    Legal Standard**

To allege an Eighth Amendment claim for inhumane conditions of confinement, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010). "Deliberate indifference describes a state of mind more blameworthy than negligence" but is satisfied by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Plaintiff must demonstrate first that the seriousness of the risk

8

was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his health, and second that there was no reasonable justification for exposing him to that risk. Lemire, 726 F.3d at 1078 (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted).

To make out a claim for failure to protect, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842.

Finally, for Eighth Amendment claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)).

### 2.   Analysis

Turning to Plaintiff's complaint, he first contends that on February 18, 2016, he was removed from his cell in ad-seg and escorted to a side hallway, where he was assaulted by four inmates in view of Defendants. He provides no details about the alleged assault, does not identify the inmates responsible or specify who was responsible for which act, and he does not identify which Defendants were present or what they did or did not do to protect him. These allegations fail to state a claim for failure to protect, however Plaintiff will be granted leave to amend.

Plaintiff next contends that after Defendants injected him with methamphetamines, he "appeared" to experience chest pains, but Defendants failed to seek medical attention for several hours. While Plaintiff claims he was in serious need of medical attention, he does not detail how his condition was serious, nor does he allege that Defendants knew of his medical need and deliberately failed to address it. Furthermore, it appears that Plaintiff was in fact transferred to Sonora Regional Hospital that same night, albeit for an unspecified medical reason. Thus, it does not appear that Defendants disregarded Plaintiff's need for medical attention. Plaintiff's claims in this regard will also be dismissed with leave to amend.

Plaintiff further claims that after he was discharged from the hospital and returned to SCC, Dr. Maddox convinced him to go to a mental health program at PBSP. Plaintiff remained in the program for ten days rather than the promised five. When Plaintiff finally returned to SCC and confronted Dr. Maddox, the psychiatrist sent Plaintiff to the state prison in Folsom. These allegations fail to state a claim. Plaintiff fails to demonstrate that Dr. Maddox's actions in sending him to a mental health program demonstrated deliberate indifference to a serious medical need. Furthermore, there is no evidence that the goings-on at PBSP or elsewhere were attributable to Dr. Maddox or any other named Defendant, nor does Plaintiff describe what, if anything, actually occurred at these other institutions that violated Plaintiff's rights. Plaintiff's claims pertaining to the administration of mental health treatment will be dismissed with leave to amend.

Plaintiff also complains of his treatment while he was housed at PBSP, alleging that he was denied showers and called a snitch. These vague allegations fail to state a claim.

Plaintiff next complains of his treatment while at CTF, stating he was verbally threatened and that he thinks someone did something to his food. Again, these allegations are too vague and non-specific to state a claim.

Finally, Plaintiff complains that he was placed in a level 3 SNY yard at SVSP, and that officers enlisted other inmates to threaten Plaintiff. Once again, Plaintiff fails to

10

provide sufficient facts to state a claim for inhumane conditions of confinement.

**D.     Housing Assignment**

Plaintiff complains that he was placed in a level 3 yard at SVSP when he was in fact a level 2 inmate. He also takes issue with the fact that he was removed from ad-seg involuntarily. It is unclear whether Plaintiff intends to make a Due Process claim; regardless, an inmate does not have a due process or liberty interest in remaining housed in a particular facility or institution. See Meachum v. Fano, 427 U.S. 215, 223-24 (1976) (holding that the Due Process Clause does not, in and of itself, protect a duly convicted prisoner against transfer from one institution to another . . . [even if] life in one prison is much more disagreeable than in another.") Only if Plaintiff were subjected to "an atypical and significant hardship in relation to the ordinary incidents of prison life" would Due Process be implicated. Wilkinson v. Austin, 545 U.S. 209, 221-223 (2005); Sandin v. Connor, 515 U.S. 472, 484 (1995). There is no such allegation here.

In any case, Plaintiff has not alleged how any named Defendant was responsible for Plaintiff's housing assignment at SVSP. Plaintiff's claims relating to his housing at SVSP will be dismissed.

**E.     Mail**

Prisoners have a "First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The censorship of outgoing prisoner mail is justified if the following criteria are met: (1) the regulation furthers "an important or substantial government interest unrelated to the suppression of expression" and (2) "the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Procunier v. Martinez, 416 U.S. 396, 413 (1974) (limited by Thornburgh v. Abbott, 490 U.S. 401, 413–14 (1989), only as test relates to incoming mail).

Here, Plaintiff merely alleges that the CSATF mailroom returned his mail as undeliverable. There are no facts from which the Court can conclude that any individual wrongfully interfered with Plaintiff's mail. Furthermore, any issues Plaintiff experienced

11

with his mail while at CSATF are completely unrelated to the actions of Defendants Heisol, Wright, Delgado, and Maddox at SCC. If Plaintiff believes he can make a constitutional claim for interference with his mail, he is advised to bring those claims in a separate suit. Fed. R. Civ. P. 20(a)(2) (a plaintiff may only sue multiple defendants in the same action if at least one claim against each defendant arises out of the same "transaction, occurrence, or series of transactions or occurrences" and there is a "question of law or fact common to all defendants."); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir.1997); Desert Empire Bank v. Ins. Co. of North America, 623 F.2d 1371, 1375 (9th Cir.1980).

### F.     Retaliation

It is well-settled that § 1983 provides for a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).  A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108

F.3d 265, 267-68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a complaint or grievance is constitutionally protected. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, the correct inquiry is to determine whether an official's acts "could chill a person of ordinary firmness from continuing to engage in the protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d at 532.

Here, Plaintiff claims he suffered many instances of allegedly retaliatory conduct at several different institutions. For each retaliatory action, however, the Court cannot determine what, if any, protected conduct Plaintiff engaged in prior to each instance of retaliation, or that the actions alleged were in fact adverse in nature, motivated by Plaintiff's protected conduct, and were not in furtherance of a legitimate penological purpose. Plaintiff will be granted leave to amend. Should Plaintiff choose to amend, he must limit his claims to those that relate back to the underlying events at SCC or involve the same Defendants. Unrelated instances of retaliation at other institutions involving unrelated individuals belong in a separate suit.

**G.     Conspiracy**

Based on Plaintiff's allegations, he may intend to state a claim for conspiracy. Should Plaintiff believe he can make such a claim, the standard is below.

A conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of

13

constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. (internal quotations and citations omitted). As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

### K. California State Tort Claims

Plaintiff accuses Defendants of assault and battery, which are state tort claims. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III [of the Constitution]," except as provided in subsections (b) and (c). "[Once judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." ACI v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

California's Tort Claims Act requires that a tort claim against a public entity or its

employees be presented to the California Victim Compensation and Government Claims Board ("the Board"), formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Govt. Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2009). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Super. Ct. of Kings Cty. (Bodde), 90 P.3d 116, 124 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Super. Ct., 90 P.3d at 124; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988). An action must be commenced within six months after the claim is acted upon or is deemed to be rejected. Cal. Govt. Code § 945.6; Moore v. Twomey, 16 Cal. Rptr. 3d 163 (Cal. Ct. App. 2004). Should Plaintiff believe he can allege compliance with the Tort Claims Act, the standards for the tort claims of assault and battery are below.

### 1.     Assault and Battery

Under California law, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" and "[a] battery is any willful and unlawful use of force or violence upon the person of another." Cal. Penal Code § 240, 242 (West 2005); 5 B. E. Witkin, Summary of California Law, Torts § 346 (9th ed. 1988). For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle v. United States, 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted). For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. Id. (citation and quotations omitted).

### H. Damages for Emotional Injury

The Prison Litigation Reform Act ("PLRA") dictates that a prisoner may not recover damages for alleged emotional injuries suffered while in custody without first showing he suffered physical injury. 42 U.S.C. § 1997e(e). While the physical injury need not be significant, it must be more than *de minimus*. Oliver v. Keller, 289 F.3d 623, 626-27 (9th Cir. 2002).

Here, Plaintiff primarily claims that Defendants' actions caused him emotional harm. The only physical injury Plaintiff suffered, however, was as a result of the February 18, 2016 assault and excessive force incident; even there, Plaintiff suffered only "scuffed knees" and "scars." At this juncture, the Court offers no opinion as to whether scuffs and scars constitute more than *de minimus* injury. However, Plaintiff is advised that to the extent he intends to recover damages for his alleged emotional suffering, such relief is barred by the PLRA absent a showing of physical injury.

## V. Conclusion

Plaintiff's complaint will be dismissed for failure to state a claim. The Court will provide Plaintiff with the opportunity to file an amended complaint. If Plaintiff amends, his complaint must be short and may only present the facts necessary to support his claims. Furthermore, he may only allege claims that (a) arise out of the same transaction, occurrence, or series of transactions or occurrences, and (b) present questions of law or fact common to all Defendants named therein. Fed. R. Civ. P. 20(a)(2). Plaintiff must file individual actions for unrelated claims against unrelated Defendants.

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of *respondeat superior*. Iqbal, 556 U.S. at 676-77. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v.

Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint (ECF No. 1) is DISMISSED with leave to amend;
2. The Clerk's Office shall send Plaintiff a blank complaint form along with a copy of the complaint filed January 9, 2017;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the Court in this order, or
   b. File a notice of voluntary dismissal; and
4. If Plaintiff fails to comply with this order, the Court will dismiss this action for failure to state a claim, failure to obey a court order, and failure to prosecute.

IT IS SO ORDERED.

Dated:   February 10, 2017                    /s/ *Michael J. Seng*
                                              UNITED STATES MAGISTRATE JUDGE

17