1

2

3

4

5

6

7

8

9

10          UNITED STATES DISTRICT COURT

11          EASTERN DISTRICT OF CALIFORNIA

12

13   RUSSELL S. GRANT,                    Case No. 1:17-cv-00024-MJS (PC)

                  Plaintiff,              **ORDER DISMISSING FIRST FOR**
14                                        **FAILURE TO STATE A CLAIM**

15        v.                              **(ECF No. 9)**

16   HEISOL, et al.,

                  Defendants.             **CLERK TO CLOSE CASE**
17

18

19

20

21        Plaintiff, a prisoner proceeding pro se and in forma pauperis, filed this civil rights

22   action pursuant to 42 U.S.C. § 1983 on September 6, 2016. (ECF No. 1.) On February

23   13, 2017, this Court dismissed Plaintiff's civil rights complaint with leave to amend. (ECF

24   No. 7.) Plaintiff's first amended complaint is before the Court for screening.  (ECF No. 9.)

25   He has consented to Magistrate Judge jurisdiction. (ECF No. 6.) No other parties have

26   appeared.

27

28

## I.    Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Pleading Standard

Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights "under color" of state law. 42 U.S.C. § 1983. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless,

1  the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal,
2  556 U.S. at 678; Moss, 572 F.3d at 969.

3  **III.     Plaintiff's Allegations**

4        Plaintiff is currently incarcerated at the California Substance Abuse Treatment
5  Facility ("CSATF") in Corcoran, California, however his claims stem from events that
6  began at the Sierra Conservation Center ("SCC"), a state prison in Jamestown,
7  California, and carried over to Plaintiff's subsequent institutions.

8        Plaintiff names numerous Defendants: Officers Heisol, Wright, Osten, Hernandez,
9  and J. Delgado of SCC; Officer Gomez of California Training Facility ("CTF"); Officers
10  Burke and Hall of Pelican Bay State Prison ("PBSP"); psychiatrist Dr. Maddox of SCC;
11  Nurse Valera of SCC; Doe Officers 1-2 of SCC, John Doe 7, a nurse or correctional
12  officer at SCC; John Doe 8, a psychiatrist at PBSP; Doe Officer 9 of PBSP; Doe Officer
13  10 of CTF; and numerous John Doe inmates housed at SCC and CTF.

14        Plaintiff's allegations are as follows:

15        On the night of February 17, 2016, Plaintiff was housed in the administrative
16  segregation unit ("ad-seg") of SCC. Doe Officers 1 and 2 arrived at Plaintiff's cell and Doe
17  1 told Plaintiff he was moving to another cell. [1] Plaintiff believes these Defendants did not
18  actually intend to move Plaintiff to another cell. Doe 1 shackled Plaintiff before he left the
19  cell.

20        Once Plaintiff was in the hallway, Defendant Heisol stated to Plaintiff, "You told
21  ISU I had drugs!" Plaintiff was confused by that statement. Two inmates[2] began
22  aggressively shoving Plaintiff in the hallway in the direction of an awaiting CDCR van.
23  Plaintiff attempted to resist, but could not because of the shackles. Next, two more
24  inmates each pulled out a prison knife. One inmate said, "Don't make us[ ] use this on
25  you."  Doe Defendant 1, a correctional officer, placed Plaintiff in the van. Defendant
26  Hernandez drove the van to the main medical building. Doe Defendant 1 and Hernandez

27  _____
[1] Plaintiff's first civil rights complaint (ECF No. 1.) placed this event on the night of February 18, 2017.
28  [2] All of the inmates named in Plaintiff's complaint are labeled Defendants. For the reasons below, they will
be dismissed from the complaint.

hurried Plaintiff into the building.

Inside the medical building, four inmates attacked Plaintiff. Each inmate grabbed one of Plaintiff's body parts. One inmate pulled Plaintiff's pants down. Another brandished a medical knife and stated, "You snitchin', I will cut yo' d**k off." Doe Defendant 7, a nurse or correctional officer, did not stop the inmates from grabbing the medical knife. As the inmates continued assaulting, threatening, and intimidating Plaintiff, Defendants Heisol, Hernandez, and Does 1 and 7 conspired to allow the inmates to harm Plaintiff. Defendants knew that the inmates would harm Plaintiff when they provided the inmates with knives. They did not stop the inmates from attacking Plaintiff. Plaintiff believes Defendant Heisol conspired with the other Defendants because Heisol had been caught with drugs.

After the attack Plaintiff was taken to Sonora Regional Hospital in Sonora, California, "for a false medical reason" written up by Doe 7.

On February 21, 2016, Plaintiff was discharged from the hospital and returned to SCC. He was housed in "OHU," which is in the main medical area. On February 22, 2016, Plaintiff was returned to ad-seg. That day, Doe Defendant 8, a correctional officer, telephoned Defendant Dr. Maddox. Dr. Maddox arrived in ad-seg and told Plaintiff he was there because an officer called him and he wanted to ask Plaintiff some questions. Plaintiff told Dr. Maddox about the assault, as well as the fact that drugs were injected into Plaintiff. Plaintiff also described the intimidation he suffered and his visits to the hospital. Dr. Maddox told Plaintiff he could help get Plaintiff out of ad-seg by putting Plaintiff into a program. Dr. Maddox conspired with other Defendants to be deliberately indifferent to Plaintiff's health and safety.

On February 23, 2016, Plaintiff was transferred to the PBSP Mental Health/Suicide Program unit. The next day, Plaintiff was seen by Doe Defendant 8, a psychiatrist, for an initial evaluation. Plaintiff explained to Doe Defendant 8 that he was not suicidal, and was manipulated into entering the program. Doe Defendant 8 stated Plaintiff needed to remain in the program for five days before he could be cleared.

4

Throughout Plaintiff's stay at PBSP, Defendants Hall and Burke would not allow Plaintiff to shower. Burke continuously marked Plaintiff down for false charges in order to keep Plaintiff there longer.

Plaintiff did not return to SCC until March 4, 2016. When Plaintiff arrived at SCC, he asked Dr. Maddox why Dr. Maddox "lied" to Plaintiff. Dr. Maddox sent Plaintiff to the California State Prison in Folsom, California for further psychiatric treatment "for his pure enjoyment," even though Plaintiff had been cleared by five psychiatrists.

Several months later, on July 23, 2016, Plaintiff was apparently housed at CTF. Defendant Heisol conspired with Defendant Gomez and Doe Defendant 10, a correctional officer, to allow several CTF inmates to go to Plaintiff's cell to intimidate Plaintiff in order to get him off the "Main Line," meaning out of the general population. Defendant Heisol allowed this to happen for his own enjoyment. Later, Plaintiff was housed in ad-seg.

Plaintiff accuses Defendants of conspiring to "deter" Plaintiff, violate Plaintiff's civil rights, and deprive Plaintiff of needed medical attention. Plaintiff seeks nominal, compensatory and punitive damages.

## IV. Discussion

For the reasons below, Plaintiff's complaint will be dismissed. The Court finds that further leave to amend will be futile, and therefore will be denied.

### A. Linkage

Under § 1983, in order to state a claim against an official in his personal capacity, a plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77; Simmons, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may not be imposed on

supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Where a plaintiff alleges a defendant failed to intervene to stop the abuses of subordinate staff, he must allege that the supervisor defendant failed to intervene after being placed on notice of ongoing constitutional violations by subordinate staff. Starr, 652 F.3d at 1205-08.

Plaintiff was previously advised of this requirement. (ECF No. 7 at 2, 7.) Here, Plaintiff's complaint includes no allegations against Defendants Wright, Osten, Delgado, Valera, or Doe Officer 9 of PBSP. The fact that Plaintiff did nothing to correct these identified defects is grounds to assume he is unable to correct them. No useful purpose would be served by again advising him of them and of what is necessary to correct them and then giving him another opportunity to correct them. Those Defendants will be dismissed without leave to amend.

**B.    Inmate Defendants**

Section 1983 cases may only be brought against individuals acting "under color of state law." 42 U.S.C. § 1983. Thus, the conduct allegedly causing the violation of a federal right must be fairly attributable to the state. Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

The Supreme Court recognizes a two-part approach to this question of "fair attribution." First, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id.

Here, Plaintiff names numerous inmates as Defendants. Inmates are not state actors, nor can it be said that their supposed wrongdoing was caused by the exercise of some right or privilege created by the state. All claims against inmate "Defendants" will therefore be dismissed without leave to amend.

## C. Verbal Abuse and Threats

Allegations of intimidation, verbal abuse, or threats fail to state a constitutional claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983") (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (mere threat does not constitute constitutional wrong). To the extent Plaintiff seeks recompense based purely on the fact that hurtful statements were made, those claims are dismissed without leave to amend.

## D. Eighth Amendment Excessive Force and Conditions of Confinement

The Eighth Amendment protects prisoners from both excessive uses of force and inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).

Here, there is no allegation that any prison official used an unreasonable amount of force against Plaintiff. The Court thus turns to whether Plaintiff was subjected to inhumane conditions of confinement.

To allege an Eighth Amendment claim for inhumane conditions of confinement, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer, 511 U.S. at 847; Thomas v. Ponder,

611 F.3d 1144, 1150-51 (9th Cir. 2010). "Deliberate indifference describes a state of mind more blameworthy than negligence" but is satisfied by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. Plaintiff must demonstrate first that the seriousness of the risk was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his health, and second that there was no reasonable justification for exposing him to that risk. Lemire, 726 F.3d at 1078 (citing Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010)) (quotation marks omitted).

To make out a claim for failure to protect, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842.

Plaintiff's allegations that inmates were recruited at various points to threaten and intimidate Plaintiff could give rise to a claim. Garcia v. Ojeda, No. 1:07-CV-01750-AWI, 2010 WL 5173147, at *6 (E.D. Cal. Dec. 14, 2010) ("[A] rational trier of fact could conclude that it is not constitutionally acceptable for a correctional officer to ask inmates to attack a particular prisoner."), *report and recommendation adopted sub nom.*, Garcia v. Masiel, No. 1:07-CV-01750-AWI, 2011 WL 1100089 (E.D. Cal. Mar. 22, 2011). However, Plaintiff's conclusory allegations fail to establish precisely which Defendants solicited these inmates or how. While Plaintiff need not provide detailed factual allegations, Iqbal, 556 U.S. at 678, he cannot attribute liability generally to a group of Defendants, Jones, 297 F.3d at 934. Plaintiff was advised that such conclusory allegations were insufficient

8

to state a claim. (ECF No. 7 at 8-10.) As above, The fact that Plaintiff did nothing to correct the deficiencies is grounds to assume he is unable to correct them. No useful purpose would be served by again advising him of what is necessary to correct them and then giving him yet another opportunity to correct them. He will not be given further leave to amend.

Likewise, Plaintiff's allegation that he was deprived of medical attention for a serious medical need is utterly devoid of detail. Plaintiff will not be given leave to amend this claim.

### E.    Retaliation

It is well-settled that § 1983 provides for a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord* Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be

considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a complaint or grievance is constitutionally protected. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, the correct inquiry is to determine whether an official's acts "could chill a person of ordinary firmness from continuing to engage in the protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d at 532.

Here, Plaintiff claims he suffered many instances of allegedly retaliatory conduct at several different institutions, including being forced into mental health programs, being deprived showers and medical care, and being threatened by other inmates. For each retaliatory action, however, the Court cannot determine what, if any, protected conduct Plaintiff engaged in prior to each instance of retaliation, or that the actions alleged were in fact adverse in nature, motivated by Plaintiff's protected conduct, and were not in furtherance of a legitimate penological purpose. Plaintiff was previously granted leave to amend this deficiency. (ECF No. 7 at 13.) For the same reasons stated above, he will not be given further leave.

### F.    Conspiracy

Plaintiff believes all Defendants conspired with Defendant Heisol to commit the above-described constitutional violations against Plaintiff.

A conspiracy claim brought under Section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting

10

Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the Court may not apply a heightened pleading standard to Plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. (internal quotations and citations omitted). As such, a bare allegation that Defendants conspired to violate Plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

Plaintiff's complaint contains just such a bare allegation of conspiracy. Plaintiff asserts that prison officers, medical staff, and inmates across three separate institutions all conspired with Defendant Heisol to threaten and intimidate Plaintiff, subject Plaintiff to unneeded psychiatric treatment, and otherwise punish Plaintiff because Heisol believed Plaintiff had "snitched." These allegations are too speculative to credit. Again, Plaintiff was advised of the standards for a conspiracy claim. (ECF No. 7 at 13-14.) He will not be given leave to amend.

**V.      Conclusion**

Plaintiff's first amended complaint will be dismissed for failure to state a claim. Further leave to amend would be futile and will not be granted.

Accordingly, it is HEREBY ORDERED that:

1.      Plaintiff's first amended complaint (ECF No. 9) is DISMISSED with prejudice for failure to state a claim;

11

2.    The Clerk's Office shall terminate all pending motions and CLOSE this
      case; and

3.    Dismissal counts as a strike pursuant to the "three strikes" provision of 28
      U.S.C. § 1915(g).

IT IS SO ORDERED.

Dated:    April 14, 2017            /s/ *Michael J. Seng*
                                   UNITED STATES MAGISTRATE JUDGE